UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EUGENIA NASPUD,

                              Plaintiff,                        **COMPLAINT**

  -against-                                           **Jury Trial Requested**

AUCAPINA CABINETS INC., KLEVER AUCAPINA,
OLMEDO AUCAPINA, and PEDRO AUCAPINA,    **Docket No.: 22-cv-06328**
individually,

                             Defendants.
----------------------------------------------------------------X

        Plaintiff EUGENIA NASPUD ("Ms. Naspud" or "Plaintiff"), by and through her counsel, Bell Law Group PLLC, as and for her Complaint in this action against Defendant(s) AUCAPINA CABINETS INC., KLEVER AUCAPINA, OLMEDO AUCAPINA, and PEDRO AUCAPINA, ("Defendants"), hereby alleges as follows:

## NATURE OF ACTION

        1.     This is a civil action based upon violations committed by the Defendants, AUCAPINA CABINETS INC., KLEVER AUCAPINA, OLMEDO AUCAPINA, and PEDRO AUCAPINA (collectively "Defendants").

        2.     This action is brought to redress Defendant's unlawful wage practices.

        3.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. 201 et seq. ("FLSA") that she is entitled to recover from Defendants: (1) unpaid overtime; (2) unpaid minimum wages; (3) liquidated damages and (4) attorneys' fees and costs.

        4.     Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she is entitled to recover from Defendants: (1) unpaid overtime (2) liquidated damages and statutory penalties and (5) attorneys' fees and costs.

1

5. Plaintiff further alleges that, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., she is entitled to recover from Defendants for ongoing harassment, discrimination and retaliation based on sex: (1) compensatory and punitive damages; (2) attorneys' fees and costs.

6. Plaintiff further alleges that, pursuant to New York State Human Rights Law Exec. Law §296 ("NYSHRL"), she is entitled to recover from Defendants for discrimination and retaliation based on sex: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The Court also has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332.

8. In addition, the Court has jurisdiction over Plaintiff's claim under FLSA pursuant to 29 U.S.C. § 207 *et seq*.

9. The Court is empowered a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 *et seq*.

10. Venue is proper in the United States District Court, Eastern District of New York pursuant to 29 U.S.C. § 1391, because a substantial portion of the wage violations which give rise to Plaintiff's claims occurred in this district.

## PROCEDURAL PREREQUISITES

11. Defendant is subject to personal jurisdiction in New York based on the Equal Employment Opportunities Commission ("EEOC").

12. Plaintiff received a Notice of Right to Sue from EEOC, dated August 5, 2022, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

13. This action is commenced within ninety (90) days of receipt to the Right to Sue.

## PARTIES

14. Plaintiff, EUGENIA NASPUD, is a resident of Queens County.

15. Upon information and belief, Defendant AUCAPINA CABINETS, INC., is a domestic business corporation organized under the laws of New York, with a principle executive office located at 57-37 57TH drive, Maspeth, New York 11378.

16. Upon information and belief, Defendant, OLMEDO AUCAPINA is the owner of Defendant, AUCAPINA CABINETS, INC.  OLMEDO AUCAPINA exercised control over the terms and conditions of Plaintiff's employment and those of similarly situated employees. With respect to Plaintiff and other similarly situated employees, he had the power to (i) fire and hire, (ii) determine rate and method of pay and (iii) otherwise affect the quality of employment. Plaintiff was hired directly by Defendant OLMEDO AUCAPINA and fired at his direction.

17. Upon information and belief, Defendant, KLEVER AUCAPINA is the owner of Defendant, AUCAPINA CABINETS, INC.  KLEVER AUCAPINA exercised control over the terms and conditions of Plaintiff's employment and those of similarly situated employees. With respect to Plaintiff and other similarly situated employees, he had the power to (i) fire and hire, (ii) determine rate and method of pay and (iii) otherwise affect the quality of employment. Plaintiff was hired directly by Defendant KLEVER AUCAPINA.

18. Upon information and belief, Defendant, PEDRO AUCAPINA is the owner of Defendant, AUCAPINA CABINETS, INC.  PEDRO AUCAPINA exercised control over the terms and conditions of Plaintiff's employment and those of similarly situated employees. With respect to Plaintiff and other similarly situated employees, he had the power to (i) fire

and hire, (ii) determine rate and method of pay and (iii) otherwise affect the quality of employment. Plaintiff was hired directly by Defendant PEDRO AUCAPINA.

19. At all relevant times, Defendant, AUCAPINA CABINETS, INC., was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

20. At all relevant times, the Defendants are "employers" within the meaning of the NYSHRL and are "employers" and "persons" within the meaning of Section 15(a) of the FLSA and Section 215 of the NYLL.

21. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

22. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned overtime wages in direct contravention of the FLSA and the NYLL.

23. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned minimum wages for hours where she was not compensated in direct contravention of the FLSA and the NYLL.

24. At all relevant times, Defendants knowingly and willfully discriminated against Plaintiff based on her sex, in direct contravention of Title VII of the Civil Rights Act of 1964, as amended.

25. At all relevant times, Defendants knowingly and willfully discriminated against Plaintiff based on her sex, in direct contravention of the NYLL, as amended.

26. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FACTS

27. At all relevant times herein, AUCAPINA CABINETS, INC. was and is owned by PEDRO AUCAPINA, OLMEDO AUCAPINA and KLEVER AUCAPINA and is located at 57-37 57th Dr., Maspeth, New York 11378.

28. In or August 2018, Defendants hired Plaintiff as a factory worker at AUCAPINA CABINETS INC., a factory operated by Defendants.

29. From August 2018 until 2019, Plaintiff's rate of pay was $13.00. In 2020 until the end of her employment with Defendants, her rate of pay per hour increased to $15.00 per hour.

30. From the commencement of her employment until 2020, Plaintiff worked over forty (40) hours per week.

31. Specifically, Plaintiff worked six (6) days per week. Her schedule was from Monday to Friday from 6 a.m. until 6 p.m.; and on Saturdays from 7 a.m. until 1 p.m. for a total of approximately sixty (60) to sixty-six (66) hours per week.

32. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the NYLL overtime rate (of time and one-half) to the Plaintiff.

33. Plaintiff always worked over forty (40) hours per week to complete her work assignments and she was only compensated for all hours worked at her regular hourly rate.

34. For example, for the week of March 6, 2020, until March 12, 2020, Plaintiff worked 55 hours and was paid $600.00 via check and was paid cash at her regular rate of $15.00 for the extra 15 hours she worked that week in the amount of $225 paid in cash.

35. In 2018, As a factory worker, Plaintiff was responsible for spray painting cabinet doors. In 2020, Plaintiff was transferred to another department where her duties were smoothing the wood used to build the cabinets.

36. Throughout her employment, Plaintiff consistently performed her duties in an exemplary manner.

37. From the commencement of her employment, Plaintiff's supervisor, Mr. Manuel Romero made inappropriate comments to her, for example, "why wouldn't you choose to be with me?," "Give me a chance to be with me"; "No one knows what was going on my marriage with my wife." Plaintiff told him she could never be with him and continuously rejected his advances. Furthermore, on various occasions, Mr. Romero would try to get close to the Plaintiff and touch her breast(s).

38. Plaintiff would constantly try to avoid him and asked him to calm down and let her do her job. Mr. Romero would be constantly around Plaintiff, trying to touch her body, which would make Plaintiff feel uncomfortable and threatened. If Plaintiff tried to get away from Mr. Romero, he would make threatening comment(s) like: "You know I can cut your hours."

39. Further, Mr. Romero's abusive comments and actions were ongoing throughout Plaintiff's employment. For example, he would tell Plaintiff that he wanted to have a relationship with her, that he wanted to take Plaintiff out on a date because he liked her. Plaintiff would reject his advances and tell him that he was married, and he should not be making those comments. To make matters worse, he would constantly tell Plaintiff that he was never going to get fired. He would tell Plaintiff that he has a very close relationship with the owner(s) of the factory, and that he knew all their secrets. He would also tell Plaintiff that he was the one that decided how many hours Plaintiff would be scheduled to work, and that he could get her fired at any point.

40. Furthermore, Mr. Romero would instruct Plaintiff to take out the garbage and would follow her to the alley of the factory to try and get close to Plaintiff and touch her breast(s), buttocks and touch her body when no one was around. These tasks, designed to get Plaintiff alone, would always be exclusively assigned to Plaintiff or other female co-workers.

41. Naturally, all of these comments would create an intense fear for Plaintiff's well-being at work and created an atmosphere of extreme stress and anxiety for her on a daily basis.

42. Plaintiff would constantly complain about Mr. Romero to both Supervisors, Olmedo Aucapina and Klever Aucapina. Plaintiff complained about Mr. Romero's abusive behavior, how he would constantly scream at Plaintiff, make her carry heavy pieces of furniture that would cause her back pain and would make comments to Plaintiff like: "if you can't do it get out of here" and "move faster" in a very aggressive tone.

43. On or around August 2019, after multiple complaints, Mr. Romero was transferred from being Manager to the painting department.

44. On or around September 2020, there was a party at the factory. The employees, and owners, attended the party. There was alcohol involved and towards the end of the party, it was obvious that Mr. Romero was under the influence. When Plaintiff left the party, she proceeded to walk home since she lives near by the factory. Mr. Romero followed her in his car and asked her to jump in because he needed to talk to her. Plaintiff asked him what he needed from the sidewalk, but he insisted that Plaintiff jump in the car briefly. Hesitantly, Plaintiff went in his vehicle because she feared reprisal at work the next day if she did not do so. This is when he pulled the lever, pushed the car seat all the way back to a lying down position and he tried to force himself on top of Plaintiff. He started touching Plaintiff's breasts, face and vagina and she started screaming for help and fighting back. Plaintiff was finally able to trick him and told him that someone was

watching them. In that moment, Plaintiff unlocked the car and ran away.

45. After this incident, Plaintiff could not take it anymore and she spoke to Mr. Klever Aucapina. Plaintiff told him what happened at the party, and after in Mr. Romero's car, and she explained how Mr. Romero tried to sexually assault her. Plaintiff told Klever Aucapina she was afraid and told him she could not keep working under the supervision of Mr. Romero.

46. Thereafter, Plaintiff was transferred to another department. Plaintiff thought this was the perfect opportunity for her to start over, to continue performing her job in a safe environment but it did not go that way.

47. After one of Plaintiff's co-workers decided to initiate a complaint against the company, the harassment became unbearable. The comments were non-stop like: "bend over backwards," "if you are not happy here then you can leave," and other sexual comments. The violence was not only psychological but also physical as Defendants made Plaintiff collect the garbage from the whole company even though that was not part of her job duties or carry heavy stuff regardless of the repercussions it could have on her health. Plaintiff believed that Defendants conduct was designed to get her to resign from her position at the company.

48. Plaintiff's new supervisor, "Hernan", would constantly make sexual comments like: "Open the dolly door(s) like you open your legs at night" or "make sure the pieces are smooth like smooth asses". To aggravate the situation, Plaintiff's health started to suffer. Plaintiff did not only have to deal with the sexual harassment but the work conditions in her new department. Plaintiff's new job duties included smoothing the cabinet pieces in preparation for the painting. Plaintiff was never provided with any type of protection equipment against the dust like a filter mask. Plaintiff started to develop serious health issues that affected her lungs as it was really hard for Plaintiff to breath. Plaintiff also had to carry heavy doors into the dolly which caused her to

have serious back problems.

49. As a retaliation for Plaintiff's constant complaints, Defendants started cutting her work hours, directly affecting Plaintiff's income and financial stability. Plaintiff complained to Olmedo, Pedro and Klever Aucapina and asked why her hours were being cut. Plaintiff told Defendants she felt discriminated against due to their conduct. Plaintiff told them that they were further retaliating against her.

50. On or around April 2021, Plaintiff complained to Klever Aucapina about the constant obscene and sexual comments that Supervisor Hernan "Doe" would make to her and how uncomfortable she felt every day. On or around June 2021, again complained to Klever Aucapina concerning Supervisor Hernan's conduct. Mr. Aucapina promised Complainant that she was going to start doing more deliveries to avoid her being in this hostile situation. That change never took place.

51. On or around July 7, 2021, Plaintiff went to speak with Mr. Olmedo Aucapina to let him know she could not keep working under these working conditions and under a hostile work environment. Plaintiff could no longer take all the humiliations she suffered from both supervisor(s) and the inaction of the owners to ensure Plaintiff's safety.

52. On July 7, 2021, Plaintiff was constructively discharged from her position.

COUNT I
**<u>VIOLATION OF THE FAIR LABOR STANDARDS ACT</u>**

53. Plaintiff realleges and reavers ¶¶ 1 through 52 of this Complaint as if fully set forth herein.

54. At all relevant times, upon information and belief, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within

the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

55. Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.

56. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff for her hours worked in excess of forty hours per workweek.

57. Defendants failed to pay Plaintiff overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

58. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the statutory rate of time and one-half for her hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

59. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff her minimum wages in the lawful amount for hours worked when Defendants knew or should have known such was due.

60. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

61. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

62. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unlawful deductions, unpaid overtime wages, unpaid minimum wages plus an equal amount as liquidated damages.

63. Plaintiff is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II
## **VIOLATION OF THE NEW YORK LABOR LAW**

64. Plaintiff realleges and reavers ¶¶ 1 through 63 of this Complaint as if fully set forth herein.

65. At all relevant times, Plaintiff was employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

66. Defendants willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

67. Defendants willfully violated Plaintiffs rights by failing to pay Plaintiff minimum wages in the lawful amount for hours worked.

68. Defendants knowingly and wil1fully operated their business with a policy of not providing a proper wage statement to Plaintiff, in violation of the New York Labor Law. Defendants are required to provide itemized listings of deductions taken on each wage statement.

69. Due to the Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants her unpaid overtime, unpaid minimum wages, improper wage deductions by Defendants, statutory penalties, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law §665(1).

COUNT III
**VIOLATIONS OF TITLE VII, 42 U.S.C. § 2000(e)** *et seq.*
**(SEXUAL HARASSMENT)**

70. Plaintiff realleges and reavers ¶¶ 1 through 69 of this Complaint as if fully set forth herein.

71. Title VII of the Civil Rights Act of I 964, as amended, 42 U.S.C. §2000e-2 provides:

(a) It shall be an unlawful employment practice for an employer:

….to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

72. Defendants engaged in un1awful employment practices prohibited by 42 U.S.C. §2000e-2 by unlawfully terminating Plaintiff, and otherwise discriminating against Plaintiff by creating a hostile work environment, in the form of sexual harassment.

73. Pursuant to EEOC regulations as stated in 29 C.F.R. 1604.11, [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

74. Defendants violated 29 C.F.R.1604.11 by creating an intimidating and hostile work environment for Plaintiff in retaliation for her rejection of Defendant Romero's unlawful sexual

advances. Plaintiff complained to Defendants about Mr. Romero's unlawful conduct and made her work environment unbearable in retaliation for her complaints.

75. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to ... discriminate against any of his employees . . . because [s]he has opposed any practice made an \unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

76. Defendants engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to Defendant Romero's sexual harassment.

## COUNT IV
## **VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**
**(SEX DISCRIMINATION)**

77. Plaintiff realleges and reavers ¶¶ through 75 of this Complaint as if fully set forth herein.

78. New York Executive Law § 296 prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sex and also prohibits retaliation against individuals who in good faith complain about discriminatory practices to which they have been subjected.

79. Plaintiff is an employee and a qualified person within the meaning of the New York State Human Rights Law ("NYSHRL") and Defendants are covered employers under the NYSHRL.

80. Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of sexual harassment.

81. Defendants willfully violated The New York State Human Rights Law, as amended. They were aware of the blatant discrimination based on sex and yet failed to correct or reprimand the instigators of such harassing conduct.

82. Defendants knowingly and willfully violated the New York State Human Rights Law, as amended, because Defendants terminated the employment of Plaintiff on the basis of her sex.

83. Due to Defendants' violations under The New York State Human Rights Law, as amended, based on discrimination of the basis of sex, Plaintiff is entitled to recover from Defendants: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

### COUNT V
### **VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**
### **(SEXUAL HARASSMENT)**

84. Plaintiff realleges and reavers ¶¶ 1 through 83 of this Complaint as if fully set forth herein.

85. Defendants discriminated against Plaintiff by permitting an ongoing and pervasive pattern and practice of sexual harassment against Plaintiff by creating and maintaining a sexually hostile work environment, in violation of New York Executive Law § 296. Defendants' sexual harassment altered Plaintiff's conditions of employment by creating an abusive working environment for her.

86. As a direct and proximate result of Defendants' aforementioned conduct, Plaintiff was damaged and suffered economic losses, mental and emotional harm, anguish and humiliation.

87. By reason of the sexual harassment suffered at Defendants' establishment, Plaintiff is entitled to all legal and equitable remedies available under New York Executive Law § 296.

## COUNT VI
## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
## (RETALIATION)

88. Plaintiff realleges and reavers ¶¶ 1 through 87 of this Complaint as if fully set forth herein.

89. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sex and also prohibits retaliation against individuals who in good faith complain about discriminatory practices to which they have been subjected.

90. New York Executive Law § 296(7) provides that:

91. "It shall be an unlawful discriminatory practice: For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

92. In violation of New York Executive Law § 296, Defendants discharged, expelled and otherwise discriminated against Plaintiff because she opposed practices forbidden by New York Executive Law § 296.

93. Defendants' actions became so intolerable that Plaintiff could no longer work under the work conditions.

94. As a direct and proximate result of Defendants' aforementioned conduct, Plaintiff was damaged and suffered economic losses, severe mental and emotional harm, anguish and humiliation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.     A declaratory judgment that Defendants engaged in unlawful employment practices under the FLSA, New York Labor Law, Title VII, New York Executive Law § 296 et seq.

b.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.     An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

d.     An award of damages to Plaintiff, retroactive to the date of her discharge and prior, for all lost wages and benefits, past and future, back and front pay, resulting from Defendants' unlawful employment practices and to make her whole for any losses suffered as a result of such unlawful employment practices;

e.     An award of compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

f.     An award of punitive damages;

g.     An award of statutory penalties, and prejudgment and post judgment interest;

h.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and such other equitable relief.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 19, 2022
       Syosset, New York

                                 Respectfully submitted,

                                 BELL LAW GROUP, PLLC

                                 By: _____/s/_____
                                 Andrea E. Batres, Esq.
                                 116 Jackson Avenue
                                 Syosset, New York 11791
                                 Tel: (516) 280-3008
                                 Fax: (212) 656-1845
                                 ab@belllg.com

                                 *Attorneys for Plaintiff*